1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**HONORABLE RICHARD A. JONES**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

**DOUGLAS L. KIMZEY**, an individual,

Plaintiff,

v.

**YELP INC.**, a Delaware corporation,

Defendant.

**Case No.: 2:13-cv-01734-RAJ**

**DEFENDANT YELP INC.'S RCW 4.24.525 SPECIAL MOTION TO STRIKE AND TO DISMISS PURSUANT TO FRCP 12(b)(6)**

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:
January 10, 2014

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ..................................................................................2

   A.  Kimzey and the Allegations in the Complaint ................................................2

   B.  Kimzey's Allegations Regarding Google.........................................................2

   C.  Kimzey's Allegations Regarding the RICO Act Claim ...................................3

   D.  Yelp Provides a Consumer Information and Review Website...........................4

   E.  The Review in Question and Subsequent Related Postings ..............................6

III.  DISCUSSION...........................................................................................................7

   A.  Legal Framework and Standards of Review .....................................................7

   B.  Kimzey's Complaint is Based on an Action Involving Public Participation Under Washington's Anti-SLAPP law..............................................................8

     1.  Washington's anti-SLAPP law covers a wide range of expressive activity ...............8

     2.  Kimzey's claims are based on actions involving public participation and petition....9

       a.  the Site is a "public form" ......................................................................10

       b.  the Review is a statement in connection with an issue of public concern............10

   C.  CDA 230 Bars Kimzey's Claims ....................................................................13

     1.  Yelp is a provider of an "interactive computer service"...........................................14

     2.  The claims treat Yelp as the Publisher or Speaker .................................................15

     3.  Sarah K., a third-party author, created the content at issue .....................................17

     4.  Kimzey's attempts to plead around CDA 230 must fail ..........................................18

   D.  Kimzey's Allegations Fail to State a Claim ...................................................20

     1.  Kimzey fails to state a claim for defamation .........................................................20

     2.  Kimzey's RICO Act claim fails to allege any "racketeering activity" .....................21

     3.  Kimzey's claims under the Washington Consumer Protection Act are deficient......22

IV.  CONCLUSION.......................................................................................................22

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - i
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

# TABLE OF AUTHORITIES

## CASES

AR Pillow Inc. v. Maxwell Payton, LLC,
 Case No. C11-1962RAJ, 2012 U.S. Dist. LEXIS 172015 (W.D. Wash. Dec. 4, 2012).... passim

Aronson v. Dog Eat Dog Films, Inc.,
 738 F. Supp. 2d 1104 (W.D. Wash. 2010)................................................................. 9

Ashcroft v. Iqbal,
 555 U.S. 662 (2009)................................................................................ 7, 17, 18

Backpage.com, LLC v. McKenna,
 881 F. Supp. 2d 1262 (W.D. Wash. 2012)............................................................. 15

Barnes v. Yahoo!, Inc.,
 570 F.3d 1096 (9th Cir. 2009) ............................................................................ 15

Batzel v. Smith,
 333 F.3d 1018 (9th Cir. 2003) ............................................................. 8, 14, 15, 19

Bell Atl. Corp. v Twombly,
 550 U.S. 544 (2007)................................................................................ 7, 17, 18

Browne v. Avvo, Inc.,
 525 F. Supp. 2d 1249 (W.D. Wash. 2007)......................................................... 20, 21

Carafano v. Metrosplash.com, Inc.,
 339 F.3d 1119 (9th Cir. 2003) ...................................................................... 14, 19

Chaker v. Mateo,
 209 Cal. App. 4th 1138 (2012) ...................................................................... 11, 12

Chaset v. Fleer/Skybox Int'l, LP,
 300 F.3d 1083, 1088 (9th Cir. 2002) ……………………………………………...23

Choyce v. SF Bay Area Independent Media Ctr.,
 Case No. 13-cv-01842-JST, 2013 U.S. Dist LEXIS 169813 (N.D. Cal. Dec. 2, 2013) ....... 8, 18

ComputerXpress, Inc. v. Jackson,
 113 Cal. App. 4th 993 (2001) ............................................................................ 10

Dart v. Craigslist,
 665 F. Supp. 2d 961 (N.D. Ill. 2009) .................................................................... 14

Davis v. Avvo, Inc.,
 C11-1571RSM, 2012 U.S. Dist. LEXIS 43743 (W.D. Wash. Mar. 28, 2012).......................... 9

Dimeo v. Max,
 433 F. Supp. 2d 523 (E.D. Pa. 2006) .............................................................. 14, 23

Doe v. SexSearch,
 502 F. Supp. 2d 719 (N.D. Ohio 2007).................................................................. 16

Evans v. Hewlett-Packard Co.,
 No. C 13-02477 WHA, 2013 U.S. Dist. LEXIS 146989 (N.D. Cal. Oct. 10, 2013) ............... 18

Fair Hous. Council v. Roommates.com, LLC,
 521 F.3d 1157 (9th Cir. 2008) ..................................................................... 8, 15, 20

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - ii
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

Gardner v. Martino,
  Civil No. 05-769-HU, 2005 U.S. Dist. LEXIS 38970 (D. Or. Sept. 19, 2005) ...................... 12

Gavra v. Google Inc.,
  Case No.: 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127 (N.D. Cal. July 17, 2013) ....23

Gentry v. eBay, Inc.,
  99 Cal. App. 4th 816 (2002) ................................................................. 19

Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,
  105 Wn.2d 778 (1986) ........................................................................ 22

Higher Balance, LLC v. Quantum Future Grp., Inc.,
  Civil No. 08-233-HA, 2008 U.S. Dist. LEXIS 102611 (D. Or. Dec. 18, 2008) ...................... 12

Howard v. America Online, Inc.,
  208 F.3d 741 (9th Cir. 2000) .............................................................. 21

Hustler Magazine, Inc. v. Falwell,
  485 U.S. 46 (1988) ............................................................................ 21

In re Stac Elecs. Sec. Litig.,
  89 F.3d 1399 (9th Cir. 1996) ............................................................... 7

Kruger v. Daniel,
  No. 43155-6-II, 2013 Wash. App. LEXIS 2201 (Sept. 17, 2013) ........................... 9

Levitt v. Yelp! Inc.,
  No. C-10-1321 EMC, 2011 U.S. Dist. LEXIS 124082 (N.D. Cal. Oct. 26, 2011) ............ 15, 19

Melaleuca, Inc. v. Clark,
  66 Cal. App. 4th 1344 (1998) ............................................................. 12

Mohr v. Grant,
  153 Wash. 2d 812 (2005) .................................................................. 20

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,
  564 F. Supp. 2d 544 (E.D. Va. 2008) ..................................................... 17

Nieman v. Versuslaw, Inc.,
  Case No. 12-3104, 2012 U.S. Dist. LEXIS 109069 (C.D. Ill. Aug. 2, 2012) .................. 17

Noah v. AOL Time Warner, Inc.,
  261 F. Supp. 2d 532 (E.D. Va. 2003) ..................................................... 14

Novak v. Overture Services, Inc.,
  309 F. Supp. 2d 446 (E.D.N.Y. 2004) .................................................... 14

Nygard, Inc. v. Uusi-Kerttula,
  159 Cal. App. 4th 1027 (2008) .......................................................... 9, 10

Perfect 10, Inc. v. CCBill, LLC,
  488 F.3d 1102, 1108 (9th Cir. 2007) ................................................... 14, 15

Prickett v. Infousa, Inc.,
  561 F. Supp. 2d 646 (E.D. Tex. 2006) .................................................... 19

Reit v Yelp!, Inc.,
  29 Misc. 3d 713 (N.Y. Sup. Ct. 2010) .................................................... 15

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - iii
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

Robertson v. Dean Witter Reynolds, Inc.,
   749 F.2d 530 (9th Cir. 1984) ................................................................... 7

Segal Co. v. Amazon,
   280 F. Supp. 2d 1229 (W.D. Wash. 2003)................................................22

Sing v. John L. Scott, Inc.,
   134 Wn.2d 24 (1997) ...............................................................................22

Summit Bank v. Rogers,
   206 Cal. App. 4th 699 (2012) ................................................................. 13

Turner v. Cook,
   362 F.3d 1219 (9th Cir. 2004) ................................................................22

Wilbanks v. Wolk,
   121 Cal. App. 4th 883 (2004) .................................................. 10, 11, 12

Zeran v. America Online, Inc.,
   129 F.3d 327 (4th Cir. 1997) ................................................................. 14

## STATUTES

18 U.S.C. § 1962 ............................................................................................ 21

18 U.S.C. § 1964 ........................................................................................ 1, 4

47 U.S.C § 230.......................................................................................... passim

RCW 19.86.020 ............................................................................................... 1

RCW 4.24.525 ..................................................................................... 1, 7, 8, 10

## OTHER AUTHORITIES

Senate Bill 6395, Laws of 2010, Ch. 118 § 1 ............................................... 8

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - iv
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# I.    INTRODUCTION

Defendant Yelp Inc. ("Yelp"), publishes websites and mobile applications (collectively, the "Site") that allow members of the public—free of charge—to read and write reviews about local businesses, government services, and other local entities.  Pro Se Plaintiff Kimzey brings claims against Yelp premised on a less than favorable third-party review by Yelp user Sarah K. about Kimzey's locksmith business ("Redmond Locksmith" and/or "Redmond Mobile Locksmith").  The crux of Kimzey's complaint is that Sarah K.'s review and corresponding "one star" rating are false, and that because the review and rating are available through Google's search engine, Yelp is liable for harm to his business.

Because Kimzey's claims are based on statements made on a well known and useful consumer review site, and were plainly intended to help other consumers, the claims are premised on an action involving public participation and petition—Yelp's publication of third-party consumer reviews through the Site.  Therefore, Washington's anti-SLAPP law applies, and Kimzey must demonstrate a probability that he will prevail on the merits of his claims, or his claims must be dismissed.  Kimzey cannot demonstrate a probability of prevailing on his claims for two separate reasons.  First, his claims are barred by Section 230 of the Communications Decency Act (47 U.S.C § 230 ("CDA 230")).  Yelp is the provider of an "interactive computer service" under CDA 230 that displays user generated content, and the Complaint lacks any plausible allegations that Yelp created any of the allegedly defamatory content in question (and it did not).  To the contrary, the Complaint acknowledges that a third-party Yelp user (Sarah K.) created the review.  Second, Kimzey's allegations fail to state cognizable claims.  He fails to allege a plausible claim for libel, and his qualms about Yelp's rating system are barred by the First Amendment.  His RICO Act (18 U.S.C. § 1964) claims and claims under the Washington Consumer Protection Act (RCW 19.86.020) are also deficient.  In addition to lacking allegations of several key elements, each claim relies on his flawed allegations of libel.

Accordingly, Yelp respectfully requests that the Court grant its Motion, strike Kimzey's

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 1
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1  Complaint, and award it relief under Washington's anti-SLAPP statute.

2  ## II.       FACTUAL BACKGROUND

3  **A.    Kimzey and the Allegations in the Complaint**

4            According to the Complaint, Plaintiff Douglas Kimzey is a locksmith.  Complaint (Dkt.

5  #1) ¶ 5.  Kimzey owns and operates a sole proprietorship locksmith business based in Redmond,

6  Washington, generally known as "Redmond Locksmith" or "Redmond Mobile Locksmith."  Id.

7  Kimzey maintains a website at <redmondlocksmith.com> to promote his business.  Id.  Kimzey

8  vaguely alleges that Yelp "caused to appear" (*i.e.*, published online) defamatory statements

9  relating to Kimzey's business.  *See, e.g.*, Complaint ¶ 22.  The basis for each of Kimzey's claims

10  is that Yelp displays a critical review from third-party user Sarah K. regarding his business (the

11  "Review").  Complaint ¶¶ 22-24.  Kimzey also has qualms with the "one star" rating that Sarah

12  K. left for his business.  Complaint ¶ 25.  Kimzey never actually alleges that Yelp authored the

13  Review (and it did not), but vaguely alleges that Yelp "created and developed" the allegedly

14  defamatory content.  Complaint ¶ 17.  The sole specific allegations, however, regarding Yelp's

15  role in developing the content at issue are: (1) the fact that Yelp allows reviewers to rate

16  businesses on the Site on a scale of 1 to 5 stars and (2) Yelp's alleged design and creation of "an

17  image of five stars with only one star colored in" (*i.e.*, the overall rating for the business).

18  Complaint ¶ 42; ¶ 25.

19  **B.    Kimzey's Allegations Regarding Google**

20            In an attempt to work an end-around the CDA 230 immunity provided to online

21  intermediaries such as Yelp, Kimzey peppers his Complaint with threadbare allegations that

22  Yelp created a "promotion" or "advertisement" containing statements from the Review which it

23  caused to appear on Google.com:

24            •      "This complaint concerns Libelous and Libelous Per Se content that Yelp
                      created and developed in the form of a Yelp promotion, and caused to
25                    appear on another company's website Google.com."  (Complaint ¶ 11.)

26

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 2
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

- "On or about September 20th 2011 Yelp caused to appear a Libelous Per Se statement about the Plaintiff's business on another company's website, Google." (Complaint ¶ 22.)
- "On or about September 24th 2012 Yelp republished that same Libelous Per Se statement on Google, together with [*sic*] second false statement . . .." (Complaint ¶ 23.)
- "During this same period September 20th 2011 to the present Yelp continually republishes this Libelous Per Se content on Google, by adding newly developed advertisements." (Complaint ¶ 24.)
- "The Libelous promotion about the Plaintiffs [*sic*] business that appears on Google.com was created and developed in whole or in part by Yelp." (Complaint ¶ 33.)

Kimzey does not attach to the Complaint a copy of the alleged "promotion," but the Complaint does contain some description, which shows that the "promotion" is actually a search engine indexed version of the Review.  For example, the Complaint alleges that Yelp "created and caused to appear on Google an image of five stars with only one star colored in and placed it above that Libelous Per Se statement."  Complaint ¶ 25.  The Complaint goes on that "Yelp's name appears in color above this image and Libelous content . . . [and] [o]nce a consumer 'clicks' on the Yelp promotion that appears on Google for the purpose of reading the Libelous Per Se statement they are directed to Yelp.com . . . ."  Complaint ¶¶ 26-27.  Thus, Plaintiff's allegations are that because Google indexes Sarah K.'s Review on Yelp, and displays it through the Google search engine, Yelp bears liability.

C.     **Kimzey's Allegations Regarding the RICO Act Claim**

Kimzey's allegations regarding his RICO Act claim are similarly tenuous.  Kimzey alleges that Yelp "developed and created Libelous Per Se content that links the Plaintiffs [*sic*] business with known organized crime and criminal activity" and did so for the purpose of "gaining traffic acquisition to [Defendant's] website," "gaining prominence in the market place for the [Defendant's] own business," and "profiting financially from selling advertising." Complaint ¶ 53.  Kimzey describes the "organized crime and criminal activity" which he refers

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 3
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1   to as an "illegal scheme" which is "operated by the EL-AD Group," a supposedly notorious

2   crime ring operating in the locksmithing field.  Complaint ¶ 30.  Additionally, Kimzey alleges

3   that Yelp used "extortion tactics by asking for monies in the form of advertising revenue from"

4   Kimzey, and when Kimzey refused to advertise with Yelp, Yelp prevented Kimzey "from

5   interacting with Yelp.com and the ability to defend himself on the Internet." Complaint ¶ 54.

6   Kimzey alleges that the foregoing "violations" serve "as unlawful predicate acts for purposes of

7   18 U.S.C. § 1964(c)."  Complaint ¶ 59.

8   **D.     Yelp Provides a Consumer Information and Review Website**

9          Founded in 2004, Yelp owns and operates websites and mobile applications that provide

10  a forum for members of the public—free of charge—to read and write reviews about local

11  businesses, government services, and other entities.  Declaration of Vince Sollitto in Support of

12  Yelp's Motion to Strike and to Dismiss ("Sollitto Decl.") ¶¶ 2-4.  Yelp's goal is to help the

13  public make more informed choices about local businesses, products, and activities.  Id. ¶ 2.

14  Users can search for particular types of products or services by several different variables,

15  including geographic area.  For example, a search on Yelp for "locksmiths" serving the

16  Redmond, Washington area yields hundreds of results. Id. ¶ 15.  The Site is made available to the

17  public at no charge and without any registration requirement.  Id. ¶ 3.  Those who choose to

18  register (by creating an account, which requires only providing a name, zip code, and a

19  functional e-mail address) can write reviews and have access to a broader range of features on

20  the website, such as message boards and communication tools.  Id.  Yelp does not charge users to

21  create or use a Yelp account.  Id. ¶ 3.

22         The Site allows registered users to write detailed reviews about local businesses and

23  service providers.  Id. ¶ 4; ¶ 10.  Yelp does not require reviewers to answer any questions about a

24  business or service provider—a reviewer simply types whatever he or she desires into a freeform

25  text box.  Id. ¶ 8, Ex. B.  Along with their reviews, users rate businesses and services on a scale

26  of one to five stars.  Id. ¶ 8.  Users can also vote reviews to be "useful," "funny," or "cool," and

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 4
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1   can update their own reviews with follow-up comments.  Business owners and service providers

2   can also freely post responses to the reviews that they receive on the Site.  Id. ¶ 8.  Business

3   owners and service providers can also privately contact Yelp reviewers through Yelp's

4   messaging features.  Id. ¶ 6.  Yelp does not charge for any of these features.  Id. ¶ 6.

5       Reviews and ratings appear on the Yelp page of the reviewed business or service, as well

6   as on the page of the review author.  Id. ¶ 11.  On the page of the business or service, Yelp

7   combines star ratings provided by users to create an aggregate star rating which is assigned to the

8   business or service.  Id.  If only one review is posted about a particular business or service

9   provider, there will be no aggregation of ratings—the star rating will be the same as that

10  provided by the single reviewer.  Id.  Users can click on the screen name of a reviewer to access

11  that reviewer's Yelp page, and by reading information supplied by the reviewer, as well as other

12  reviews authored by the reviewer, can thereby gauge the credibility and tastes of that reviewer.

13  Id. ¶ 5.  Overall, reviews on the Yelp tend to be more positive than negative.  Id. ¶ 12.

14      Yelp makes clear in its Terms of Service that it may not confirm the accuracy or

15  reliability of the reviews or other content posted on the Site.  Declaration of Ian MacBean in

16  Support of Yelp's Motion to Strike and to Dismiss ("MacBean Decl.") ¶¶ 7-8, Exs. B & C

17  (Section 12).  In fact, Yelp reminds users that its content is subjective.  For example, the Site

18  states: "Yelp is an online urban city guide that helps people find cool places to eat, shop, drink,

19  relax and play, based on the informed ***opinions*** of a vibrant and active community of locals in

20  the know."  MacBean Decl. Ex. D at p. 1(response to the first question) (emphasis added).  Yelp

21  operates throughout the United States, and in many other countries around the world.  Sollitto

22  Decl. ¶ 7.  As of September 30, 2013, users had posted over 47 million reviews to Yelp's

23  websites.  Id.  Yelp had an average of approximately 117 million monthly unique visitors during

24  the third quarter of 2013.  Id.  In that same quarter, Yelp's mobile applications were used on

25  approximately 11.2 million mobile devices.  Id.

26      Furthering Yelp's goal of spreading free, useful consumer commentary, content on Yelp

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 5
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

content is also widely available through a variety of search engines (and through other means, such as application protocol interfaces (APIs)).  Sollitto Decl. ¶ 20.

**E.      The Review in Question and Subsequent Related Postings**

According to Yelp's administrative records, on September 20, 2011, a Yelp reviewer identifying herself as "Sarah K." posted a one-star review of Redmond Mobile Locksmith. MacBean Decl. ¶ 3.  The Review stated:

> THIS WAS BY FAR THE WORST EXPERIENCE I HAVE EVER ENCOUNTERED WITH A LOCKSMITH. DO NOT GO THROUGH THIS COMPANY. I had just flew back from a long business trip with absolutely no sleep, had to drive into work right after getting off the plane. I was so tired that I locked my keys in the car. So when I realized what happened I called Redmond Mobile. The gentlemen on the phone told me that a technician would be out ASAP and quoted me $50 for the service, which seemed reasonable. $35 for the service call and $15 for the lock. The technician called and said he'd be at my office in 30 min, an hour goes by and nothing. Call the company back to ask about the ETA and was greeted rudely by the person I had spoken to earlier. He took no responsibility. After the technician finally showed up, he was trying to charge me $35 for the service call and $175 for the lock. I got 20% off after trying to argue with him about being late and the incorrect quote. Supposedly, the lock is $15 and up. Bullshit. CALL THIS BUSINESS AT YOUR OWN RISK. I didn't even need new keys. I just needed my car unlocked.

Id., Ex. A.  Yelp's records further reveal that, on September 9, 2012, a person—presumably the Plaintiff—using the screen name "D K. of Redmond Mobile Locksmith" posted a comment to the Review, alleging that the original review was "fraudulent."  Id. ¶ 4, Ex. A.  Sarah K. then posted a follow-up, which stated:

> I was just informed recently by a friend that this business has been trying to contact others on my friends list asking about my original review. A year ago, I had also received similar msgs from this business and also yelp requesting authentication of the review and the business directly asking me to take down the review because I must have gotten the company incorrect. So let me clarify, I do not work for a competitor of this business nor do I appreciate this type of harassment. I've already confirmed to Yelp that indeed this review was meant for Redmond Mobile Locksmith and I

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 6
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

have the receipt to prove it. I will be issuing an official complaint to Yelp about this now.

Id. ¶ 5, Ex. A.

## III.   DISCUSSION

### A.   Legal Framework and Standards of Review

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) when it lacks sufficient facts to support a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996). To avoid dismissal, a complaint must do more than "plead[] facts that are 'merely consistent with' a defendant's liability," and, instead, a plaintiff must set forth enough factual information to make it "plausible," not merely "possible," that the defendant is liable. Ashcroft v. Iqbal, 555 U.S. 662, 668 (2009) (quoting Bell Atl. Corp. v Twombly, 550 U.S. 544, 557 (2007)).

In addition to the pleading requirements of the Federal Rules of Civil Procedure and case law, this case implicates two other standards. First, because the Complaint is based on "an action involving public participation," Yelp can invoke the protections of Washington state's anti-SLAPP law. RCW 4.24.525. Once Yelp establishes that the Complaint is based on an action involving public participation, the burden then shifts to Kimzey to demonstrate the viability of his claims. As discussed in Section B, below, Washington's anti-SLAPP law was enacted specifically to encourage citizen participation on matters of public interest "without fear of reprisal through abuse of the judicial process" —i.e., to not require speakers or publishers to expend resources litigating meritless claims that are based on matters in the public interest. Second, because Yelp is the provider of an "interactive computer service," Yelp cannot be held liable for state and most federal law claims based on content that Yelp did not author. 47 U.S.C. § 230. CDA 230's broad grant of immunity has been described as not only immunity from

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 7
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

liability, but also immunity "from having to fight costly and protracted legal battles." Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157, 1174 (9th Cir. 2008).  As set forth below, Yelp demonstrates its right to invoke both the protections of the anti-SLAPP statute and its immunity under CDA 230.  Accordingly, Yelp should get the benefit of both of these rules that are designed to avoid it having to litigate meritless claims against it. Choyce v. SF Bay Area Independent Media Ctr., Case No. 13-cv-01842-JST, 2013 U.S. Dist LEXIS 169813, at *28-29 (N.D. Cal. Dec. 2, 2013) (finding that defendant properly invoked California's anti-SLAPP statute and applying CDA 230 analysis to the underlying claims); Batzel v. Smith, 333 F.3d 1018, 1026-27 (9th Cir. 2003) (same).

**B.    Kimzey's Complaint is Based on an Action Involving Public Participation Under Washington's Anti-SLAPP law**

1.    Washington's anti-SLAPP law covers a wide range of expressive activity.

As first enacted, the Washington anti-SLAPP law only provided immunity to a person who communicated a complaint or information to any branch or agency of federal, state, or local government and certain self-regulatory organizations, from claims based on communications to the agency or organization regarding any matter reasonably of concern to that agency or organization.  RCW 4.24.510.  In 2010, the Washington State legislature revised the anti-SLAPP law "by not only broadening the scope of the protected communication, but creating an efficient, uniform, and comprehensive method for speedy adjudication of lawsuits targeting persons communicating on matters of public or governmental concern."  AR Pillow Inc. v. Maxwell Payton, LLC, Case No. C11-1962RAJ, 2012 U.S. Dist. LEXIS 172015, at *3-4 (W.D. Wash. Dec. 4, 2012); RCW 4.24.525.  In enacting the revisions to the statute, the legislature found that "it is in the public interest for citizens to participate in matters of public concern and provide information to public entities and other citizens on public issues that affect them without fear of reprisal through abuse of the judicial process."  RCW 4.24.525; Senate Bill 6395, Laws of 2010, Ch. 118 § 1.  The statute provides that a party who faces a claim "that is based on an action

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 8
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

involving public participation" may bring a special motion to strike. RCW 4.24.525(4)(a).  In making a determination on this issue, courts should "consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  RCW 4.24.525(4)(c).

Courts should "liberally construe and apply [the anti-SLAPP statute] in order to effectuate its general purpose of protecting participants in public controversies from an abusive use of the courts." <u>AR Pillow</u>, 2012 U.S. Dist. LEXIS 172015, at *4.  Accordingly, courts in Washington have applied the anti-SLAPP law to a broad range of expression.  *See* <u>Davis v. Avvo, Inc.</u>, C11-1571RSM, 2012 U.S. Dist. LEXIS 43743, at *10-11 (W.D. Wash. Mar. 28, 2012) (lawyer review website covered); <u>AR Pillow</u>, 2012 U.S. Dist. LEXIS 172015, at *15-16 (product review on website formed to "provide information about infant health and parenting issues" covered); <u>Aronson v. Dog Eat Dog Films, Inc.</u>, 738 F. Supp. 2d 1104, 1112 (W.D. Wash. 2010) (use of plaintiff's home video in documentary film about health care covered by anti-SLAPP statute); <u>Kruger v. Daniel</u>, No. 43155-6-II, 2013 Wash. App. LEXIS 2201, at *10 (Sept. 17, 2013) ("Zillow.com is a participatory website where the public may read and write reviews . . ." and is covered by the statute).  The anti-SLAPP statute is "closely modeled" after the California anti-SLAPP statute, and courts look to California law as persuasive authority in interpreting the statute.  <u>AR Pillow</u>, 2012 U.S. Dist. LEXIS 172015, at *4.  The statute covers "[a]ny conduct in furtherance of the exercise of free speech in connection with an issue of public concern," and can be invoked by a business, as well as an individual, and against either a private or a public figure.  <u>Aronson</u>, 738 F. Supp. 2d at 1111.  The key question is whether the topic "is one in which the public takes an interest."  <u>Nygard, Inc. v. Uusi-Kerttula</u>, 159 Cal. App. 4th 1027, 1042 (2008) ("[T]he issue need not be 'significant' . . . [i]t is enough that it is one in which the public takes an interest.").

    <u>2.</u>    <u>Kimzey's claims are based on actions involving public participation and petition</u>.

An action involving public participation and petition includes, "[a]ny oral statement

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 9
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

made, or written statement or other document submitted, in a place open to the public or a public forum in connection with an issue of public concern . . . ." RCW 4.24.525(2)(d). As set forth below, the Review satisfies both elements.

> a.    the Site is a *"public forum"*

Construing the California anti-SLAPP statute, some courts focus on the degree of interactivity provided by the website in question. One court concluded that a statement posted on "Web sites . . . that . . . [allowed] persons . . . [to] post their own opinions" were made in a "public forum." <u>ComputerXpress, Inc. v. Jackson</u>, 113 Cal. App. 4th 993, 1006 (2001); *see also* <u>Davis</u>, 2012 U.S. Dist LEXIS 43743, at *11 ("Avvo.com website constitute[s] a 'vehicle for discussion of public issues'"). Other decisions have merely focused on whether the statement was made on a website that is generally open to the public, reasoning that "the Web, as a whole can be analogized to a public bulletin board." <u>Wilbanks v. Wolk</u>, 121 Cal. App. 4th 883, 897 (2004); *see also* <u>Nygard</u>, 159 Cal. App. 4th at 1039 ("[w]eb sites accessible to the public . . . are "public forums" for purposes of the anti-SLAPP statute"). Under either standard the Site constitutes a public forum, because: (1) it is generally available to the public at no cost and (2) it allows users to provide feedback in the form of reviews, comments, follow-up, and feedback on reviews. Sollitto Decl. ¶ 4; ¶ 8. Accordingly, the key question is whether the Review is a matter "involving public participation".

> b.    the Review is a statement in connection with an issue of public concern

Two decisions from this judicial district confirm that the posting of reviews and ratings are actions "involving public participation and petition." <u>Davis v. Avvo</u> involved a plaintiff who asserted claims against the lawyer ratings website Avvo.com. In resolving Avvo's motion to strike under Washington's anti-SLAPP statute, the court noted that it:

> has no difficulty finding that the Avvo.com website is "an action involving public participation," in that *it provides information to the general public which may be helpful to them in choosing a doctor, dentist, or lawyer*. Further, members of the general public may participate in the forum by

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 10
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

> providing reviews of an individual doctor or lawyer on his or her profile page. The profile pages on the Avvo.com website constitute a "vehicle for discussion of public issues . . . distributed to a large and interested community."

*Davis*, 2012 U.S. Dist. LEXIS 43743, *10-11 (emphasis added).  Similarly, in *AR Pillow*, this Court noted that defendant's statements made on a site formed to provide information about "infant health and parenting issues" were a matter of public concern.  *AR Pillow*, 2012 U.S. Dist. LEXIS 172015, at *15.  In *AR Pillow*, the plaintiff argued that product reviews involve "private commercial interest," rather than matters of public concern.  The Court disagreed, holding that defendant's "general warning to consumers . . . regarding . . . the performance of another company's product" was a matter of public concern.  *AR Pillow*, 2012 U.S. Dist. LEXIS 172015, at *15-16.

These two decisions are a part of a larger body of case law, including cases from California and Oregon, holding that "information ostensibly provided to aid consumers choosing among [products and services] . . . [are] directly connected to an issue of public concern." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 899-900 (2004).  In *Wilbanks*, one of the most widely cited cases acknowledging that consumer review information is a matter of public concern, the court also noted that the statements in question were "a warning not to use plaintiffs' services." *Id.* at 900.  More recently, the California Court of Appeals held, citing to *Wilbanks*, that it had little difficulty finding that statements posted to the "Ripoff Report" website about plaintiff's "character and business practices" and were a matter of public interest. *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1146 (2012).  The court also noted that the statements fell "within the rubric of consumer information about [plaintiff's] business and were intended to serve as a warning to consumers about his trustworthiness." *Id.*  Similarly, in *Gardner v. Martino*, a federal district court construing a nearly identical Oregon anti-SLAPP statute concluded that statements in a radio program regarding an outdoor vehicle seller's treatment of one of its customers were a matter of public concern.  The court noted a persuasive body of case law holding that

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 11
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

"statements about the quality of consumer goods and services are matters of public interest." Gardner v. Martino, Civil No. 05-769-HU, 2005 U.S. Dist. LEXIS 38970, *16-17 (D. Or. Sept. 19, 2005) (citing, among other cases Melaleuca, Inc. v. Clark, 66 Cal. App. 4th 1344, 1363 (1998) ("the public has a well-recognized interest in knowing about the quality and contents of consumer goods"); Higher Balance, LLC v. Quantum Future Grp., Inc., Civil No. 08-233-HA, 2008 U.S. Dist. LEXIS 102611, *13-14 (D. Or. Dec. 18, 2008) (statements posted to an online forum were made in the public interest because they touched on "the quality of [plaintiff's] products and services . . . ."). In short, numerous courts, including this Court, have found that statements assisting consumers in making choices or that warn consumers about products, or the practices of certain merchants or services, are matters of public concern.

Here, the Review provides information that would be useful to consumers regarding the quality of services offered by Kimzey's locksmith business. MacBean Decl. Ex. A. Specifically, Sarah K. relayed her experience of calling Redmond Mobile Locksmith, and the locksmith arriving late and charging a greater price than was estimated over the phone. Id. *See* AR Pillow, 2012 U.S. Dist. LEXIS 172015 *15 (finding "a general warning to consumers visiting [defendant's] website regarding her concerns with the performance of another company's product" is a matter of public concern); Chaker, 209 Cal. App. 4th at 1146 ("statements . . . about [plaintiff's] character and business practices plainly fall within the rubric of consumer information . . . and were intended to serve as a warning to consumers . . . ."). Against the backdrop of the numerous other listings of locksmith services that come up on the Site when a user searches for "locksmith" in the Redmond, Washington area, this information is undoubtedly helpful to a consumer as "information ostensibly provided to aid consumers choosing among [products and services]." Wilbanks, 121 Cal. App. 4th at 899-900. Indeed, three other Yelp users indicated that they found the Review to be "useful." MacBean Decl. ¶ 4. Moreover, locksmiths provide important services, since they play a role in ensuring the security of property and residences of consumers. The issue of locksmith advertising has received attention in the

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 12
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

local news media.  *See* Declaration of Venkat Balasubramani in Support of Yelp's Motion to Strike and to Dismiss ("Balasubramani Decl.") Exs. B-C.  Kimzey's claim for defamation also confirms the significance of the Review.  Materiality is an element of a defamation claim, and by alleging his business was defamed by the Review, Kimzey admits that the Review was material and influenced consumer decision-making.  *See* Complaint ¶ 4 ("matter in controversy exceeds the sum of $75,000.00").  Finally, Kimzey himself maintains a website where he disseminates his marketing message, including that he provides "EXACT PRICE QUOTES," "Fast Emergency Mobile Service," and "100% customer satisfaction guaranteed."  Complaint ¶ 5; Balasubramani Decl. ¶ 2, Ex. A. Sarah K.'s Review serves as a valuable counterpoint to Kimzey's own advertising, including his statements regarding customer satisfaction and reliable quotes.  Kimzey's maintenance of a website where he promotes the Redmond Locksmith business also confirms his own belief that "the public is interested in [his] activities."  Summit Bank v. Rogers, 206 Cal. App. 4th 699, 694 (2012) (where plaintiff "actively promoted itself on the Internet" the plaintiff "itself must believe the public is interested in its activities"); *see also* Chaker, 209 Cal. App. 4th at 1146-47 ("[h]aving elected to join the topix Web site, [plaintiff] . . . must have recognized that other participants . . . would have a legitimate interest in knowing about his character . . . .").

Because Yelp has met its initial burden of demonstrating by a preponderance of the evidence that Kimzey's claims are based on an action "involving public participation and petition," Kimzey must make a prima facie showing that he will prevail on his claims.[1]

**C.    CDA 230 Bars Kimzey's Claims**

Section (c)(1) of CDA 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  CDA 230 further provides that "[n]o

---

[1] Yelp's Motion is premised on legal arguments and pleading deficiencies.  Therefore, it should not be treated as a motion for summary judgment. *See* AR Pillow, 2012 U.S. Dist. LEXIS 172015, at *6-7.

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 13
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). In enacting CDA 230, Congress chose to override the traditional treatment of intermediaries as publishers and speakers, but solely for providers or users of interactive computer services. Batzel, 333 F.3d at 1026. Courts have treated CDA 230 immunity "as quite robust, adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider'." Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1123 (9th Cir. 2003). CDA 230's grant of immunity applies to a wide range of claims. See, e.g., Perfect 10, Inc. v. CCBill, LLC, 488 F.3d 1102, 1108, 1118-19 (9th Cir. 2007) (CDA 230 provided immunity from state unfair competition claim); Carafano, 339 F.3d at 1122 (invasion of privacy, misappropriation of the right of publicity, defamation, and negligence); Dart v. Craigslist, 665 F. Supp. 2d 961, 969 (N.D. Ill. 2009) (public nuisance); Dimeo v. Max, 433 F. Supp. 2d 523, 532 (E.D. Pa. 2006) (intentional infliction of emotional distress); Novak v. Overture Services, Inc., 309 F. Supp. 2d 446 (E.D.N.Y. 2004) (tortious interference with prospective economic advantage); Noah v. AOL Time Warner, Inc., 261 F. Supp. 2d 532, 538 (E.D. Va. 2003) (intentional infliction of emotional distress, unjust enrichment, negligence and fraud). The statute's sole exceptions are federal criminal, intellectual property, and communications privacy laws. 47 U.S.C § 230(e).

CDA 230 immunity attaches when (1) the defendant is a provider or user of an interactive computer service; (2) the asserted claims treat the defendant as a publisher or speaker of information; and (3) the statement or information at issue is provided by another information content provider. Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997). As demonstrated below, CDA 230 applies to Kimzey's Complaint.

1.    Yelp is a provider of an "interactive computer service".

The definition of "interactive computer service" as used in CDA 230 encompasses more than just services that provide internet access services. Batzel, 333 F.3d at 1030. Numerous

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 14
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1    courts have concluded that websites, including particularly those that allow for user generated

2    content, fall squarely within the definition of "interactive computer services."  Id. at 1031 n.16

3    (compiling decisions holding that websites constitute "interactive computer service");

4    Roommates.com, 521 F.3d at 1162 n.6 ("Today, the most common interactive computer services

5    are websites.").  The statute defines the term "interactive computer service" as "any information

6    service, system . . . that provides or enables computer access by multiple users to a computer

7    server." 47 U.S.C. § 230(f)(2).  Kimzey's own allegations admit that Yelp operates a website that

8    is a rating and review service.  See Complaint ¶ 6 ("Yelp owns and operates Yelp.com"); ¶ 42.

9    Indeed, other courts have held that Yelp provides an interactive computer service under CDA

10   230.  Levitt v. Yelp! Inc., No. C-10-1321 EMC, 2011 U.S. Dist. LEXIS 124082, at *20 (N.D.

11   Cal. Oct. 26, 2011) ("[t]he CDA immunizes providers of an 'interactive computer service'—such

12   as Yelp"); Reit v Yelp!, Inc., 29 Misc. 3d 713, 716 (N.Y. Sup. Ct. 2010) ("Yelp is an interactive

13   computer service.").  Accordingly, Yelp satisfies the first element.

14        2.    The claims treat Yelp as the publisher or speaker.

15        CDA 230 was enacted to override publisher liability for disseminating content that is

16   defamatory, and this tort falls squarely within the ambit of CDA 230.  Batzel, 333 F.3d at 1026-

17   1027 ("Absent § 230, a person who published or distributed speech over the Internet could be

18   held liable for defamation even if he or she was not the author of the defamatory text, and,

19   indeed, at least with regard to publishers, even if unaware of the statement.").  But CDA 230 is

20   not limited to defamation, and it applies to state laws generally, including state tort, criminal and

21   intellectual property laws. See, e.g., Backpage.com, LLC v. McKenna, 881 F. Supp. 2d 1262,

22   1275 (W.D. Wash. 2012); Perfect 10, 488 F.3d at 1118.  Moreover, the label attached by the

23   plaintiff does not dictate whether CDA 230's protection comes into play.  The key question is

24   whether the claim at issue derives from the defendant's actions as a publisher or speaker of

25   content.  Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1103 (9th Cir. 2009) (finding negligent

26   undertaking claim covered by CDA 230 because "the duty that [plaintiff] claims [defendant]

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 15
Case No.: 2:13-CV-01734-RAJ

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1   violated derives from [defendant's] conduct as a publisher"); <u>Doe v. SexSearch</u>, 502 F. Supp. 2d

2   719, 727 (N.D. Ohio 2007) ("determining whether to apply the CDA, the Court should not ask

3   what particular form the plaintiff's claim takes . . . but whether the claim is directed toward the

4   defendant in its publishing, editorial, and/or screening capacities, and seeking to hold it liable for

5   its publication of third-party content or harms flowing from the dissemination of that content").

6     Kimzey's Complaint is filled with allegations that sound in defamation.  *See* Complaint ¶

7   20 ("Yelp's statements are actionable"); ¶ 35 ("Yelp . . . was the speaker of the Libelious Per Se

8   statement"); ¶ 46 ("[w]hether the defendant unfairly and unlawfully created and developed a

9   Libelious Per Se Statement . . ."). Kimzey's claims for libel and libel per se seek to hold Yelp

10  liable for disseminating content and thus fall squarely within the ambit of CDA 230.  Complaint

11  ¶ 67 ("Defendant did in fact create and develop and was the speaker of a Libelious Statement . .

12  ."); ¶ 74 ("Defendant did in fact create and develop and was the speaker of Libelious Per Se

13  content . . ."). Kimzey asserts claims under the Washington Consumer Protection Act and the

14  RICO Act, but these claims are also premised solely on Yelp's alleged defamatory conduct.  For

15  example, Kimzey's RICO Act claim alleges that Yelp:

16
17     "developed and created Libelious Per Se content that links the Plaintiffs
       business with known organized crime and criminal activity in his
18     occupation having reason to know that content was Libelious Per Se
       caused that same Libelious Per Se content to appear on the internet on
19     another companies [*sic*] website."

20  Complaint ¶ 53.  His Consumer Protection Act claim is similarly premised on Yelp's alleged

21  publication of defamatory content.  *See* Complaint ¶ 63 ("Yelp caused Libelous Defaming

22  content in words and images about the Plaintiffs [*sic*] business to appear on another company's

23  website Google.com, on the same page as the Plaintiff's paid advertising").

24    It is clear, therefore, that no matter how Kimzey couches his claims, those claims

25  necessarily derive from Yelp's alleged actions as a publisher of the content at issue, and

26  therefore are barred by CDA 230.   47 U.S.C. 230(e)(1) ("Nothing in this section shall be

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 16
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1    construed to impair the *enforcement of* . . . [any] . . . Federal criminal statute . . .") (emphasis

2    added); *cf.* Nieman v. Versuslaw, Inc., Case No. 12-3104, 2012 U.S. Dist. LEXIS 109069, at *25

3    (C.D. Ill. Aug. 2, 2012) ("it is unclear whether § 230 would bar a RICO claim").

4            3.    Sarah K., a third-party author, created the content at issue.

5            Finally, there is no plausible allegation by Kimzey that Yelp, as opposed to a third-party

6    user of the Site, created any reviews or ratings related to Kimzey's business.  Kimzey admits that

7    the Review was created by a third party, in alleging (incorrectly) that Yelp "took ownership" of

8    the allegedly defamatory statement. Complaint ¶ 35.  Kimzey also acknowledges in the

9    Complaint that reviewers provide content to the Site.  Complaint ¶ 42.  Yelp has produced a copy

10   of the review in question, which itself makes clear that Sarah K., and not Yelp, posted the

11   review.  MacBean Decl. Ex A.  Indeed, in her follow up comment dated September 24, 2011,

12   Sarah K. writes that she received "[messages] from . . . yelp requesting authentication of the

13   review," that she "already confirmed to Yelp that indeed this review was meant for Redmond

14   Mobile Locksmith," and that she "will be issuing an official complaint to Yelp about this now."

15   Id.  All of these statements demonstrate that Sarah K., and not Yelp, authored the Review.

16           Seemingly cognizant that CDA 230 provides immunity to intermediaries, Kimzey

17   repeatedly alleges that Yelp "created and developed" the content in question, but his allegations

18   are implausible and conclusory, failing to satisfy the Iqbal/Twombly pleading standard.  For

19   example, Kimzey fails to offer any explanation as to why Yelp should be credited as the creator

20   of the content despite the fact that the Site makes available reviews by *consumers using the Site*,

21   and further despite the fact that the Review appears on the Site as having been provided by a

22   "Sarah K."  Kimzey bears the responsibility of alleging facts that would plausibly show that Yelp

23   was responsible for the creation or development of the Review, not merely the possibility of such

24   creation.  *See* Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 564 F. Supp. 2d 544, 548

25   (E.D. Va. 2008), *aff'd*, 591 F.3d 250 (4th Cir. 2009) ("The complaint must, however, plead

26   sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 17
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

'more than the mere possibility of misconduct.'") (citing <u>Ashcroft v. Iqbal</u>, 555 U.S. 662, 668 (2009)).  Kimzey fails to allege any such facts.

A recent case CDA 230 case from the Northern District of California, <u>Evans v. Hewlett-Packard Co.</u>, involved similar circumstances as those present here.  There, faced with a threadbare (proposed amended) complaint, the court explained:

> [t]he gravamen of plaintiffs' new allegations is that defendants were not mere service providers but actually were content providers after all. Specifically, plaintiffs allege that defendants "created, designed, developed and [sic] transformed" parts of advertisement content and "assisted in the development, distribution, naming, endorsement and [sic] sale" of the app. Without more, these allegations are too conclusory.

<u>Evans v. Hewlett-Packard Co.</u>, No. C 13-02477 WHA, 2013 U.S. Dist. LEXIS 146989, at *11 (N.D. Cal. Oct. 10, 2013); *see also* <u>Choyce</u>, 2013 U.S. Dist LEXIS 169813, at *28-29 (rejecting "formulaic recitation" of agency and conspiracy liability to plead around a CDA 230 bar). Kimzey's allegations that Yelp created any of the content at issue are nothing more than formulaic recitations of language from case law, and such conclusory allegations are insufficient under <u>Iqbal</u> and <u>Twombly</u>.

    4.    <u>Kimzey's attempts to plead around CDA 230 must fail</u>.

While Kimzey does not directly allege that the review in question was created by Yelp, when read charitably his Complaint at most makes two other allegations that can be read to assert that Yelp created other allegedly harmful content about his business: (1) the one star rating that is separate from the written comments in a review and (2) the fact that Yelp reviews and ratings appear on Google's search engine.

As with the Review—which Kimzey acknowledges was provided by a third party— Kimzey's attacks on the "one-star overall average" that his business received are fruitless due to Yelp's CDA 230 immunity.  Kimzey asserts that "reviewer[s]" choose to rate businesses on a scale of 1 through 5 stars through a system created by Yelp.  Complaint ¶ 42.  Even if Kimzey

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 18
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

accurately described the review and rating process, which he did not,[2] this would not alter the CDA 230 analysis and somehow turn Yelp into an information content provider. *See* Carafano, 339 F.3d at 1124 ("fact that some of the content was formulated in response to Matchmaker's questionnaire does not alter [the] conclusion" that defendant was entitled to CDA 230 immunity).  The Ninth Circuit in Carafano cited favorably to Gentry v. eBay, where the court held that eBay's use of a "highly structured Feedback Forum, which categorized each response as a 'Positive Feedback,' a 'Negative Feedback,' or a 'Neutral Feedback'" did not change the fact that ultimately end users provided content for which eBay could not be held liable consistent with CDA 230.  Gentry v. eBay, Inc., 99 Cal. App. 4th 816, 834-35 (2002).  Indeed, as directly relevant here, that case expressly rejected the argument that eBay's use of a "color coded star symbol next to the user name of a seller who had achieved certain levels of 'Positive Feedback'" and a separate "'Power Sellers' endorsement based on sales volume and feedback ratings" caused eBay to lose CDA 230 protection.  Id.; s*ee also* Levitt, 2011 U.S. Dist. LEXIS 124082, at *22 (finding Gentry "persuasive," and holding that aggregate star rating on Yelp is protected under CDA 230).

Kimzey also alleges that Yelp created content by "causing" the review and ratings of Kimzey's business to appear on Google.  But allowing dissemination of third-party content through another service involves the core exercise of a "publisher's editorial functions," and does not transform Yelp into an information content provider under CDA 230.  Batzel, 333 F.3d at 1018.  Moreover, simply sharing third-party content with another would not cause Yelp to lose CDA 230 protection.  *See* Prickett v. Infousa, Inc., 561 F. Supp. 2d 646, 651 (E.D. Tex. 2006) (providing user generated content "to other businesses who pay for the license to reproduce the information in their own mediums" does not result in loss of CDA 230 protection).

Finally, even if Kimzey articulated claims that made CDA 230 protection ambiguous

---

[2] As explained in the Declaration of Vince Sollitto, a reviewer simply types whatever he or she wishes to say in to a freeform text box, and assigns a rating of one to five stars. Sollitto Decl. ¶ 8, Ex. B.

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 19
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1   here—and he has not—the Ninth Circuit has cautioned that "close [CDA 230] cases . . . must be

2   resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face

3   death by ten thousand duck-bites." Roommates.com, 521 F.3d at 1174.

4   **D.    Kimsey's Allegations Fail to State a Claim**

5        Even if CDA 230 did not apply to bar Kimzey's claims—although it plainly does—

6   Kimzey's claims separately fail as a matter of law.

7        1.    Plaintiff fails to state a claim for defamation.

8        Defamation under Washington law has four elements: (1) falsity; (2) unprivileged

9   communication; (3) fault; and (4) damages. Mohr v. Grant, 153 Wash. 2d 812, 822 (2005).

10   Plaintiff repeatedly makes vague allegations that Yelp engaged in defamation but does not

11   actually allege that Yelp made any statements that were false.  Moreover, the thrust of Kimzey's

12   defamation claim against Yelp is that it published a "one star" rating about his business.  As

13   another judge in this district has previously recognized, a rating system, such as the star rating

14   system implemented by Yelp, results in the expression of an opinion, and is therefore

15   constitutionally protected speech.

16        In Browne v. Avvo, two attorneys sued the owner of Avvo.com, a website containing

17   information about attorneys and a comparative rating system.  Browne v. Avvo, Inc., 525 F.

18   Supp. 2d 1249, 1250 (W.D. Wash. 2007).  Plaintiffs asserted that Avvo's rating system would be

19   viewed by the public as a factual assertion, and that could harm their reputation, cost them

20   customers/fees, or mislead the lawyer-hiring public into retaining poor lawyers or bypassing

21   better lawyers. Id. at 1253.  In its defense, Avvo argued that "the opinions expressed through the

22   rating system, (*i.e.,* that attorney X is a 3.5 and/or that an attorney with a higher rating is better

23   able to handle a particular case than an attorney with a lower rating), are absolutely protected by

24   the First Amendment and cannot serve as the basis for liability under state law." Id. at 1251.

25   The court (Judge Lasnik) agreed.  Id.

26        As the court in Avvo identified, the test is whether a challenged statement could

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 20
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

"reasonably have been interpreted as stating actual facts" about the plaintiff. <u>Id.</u> (quoting <u>Hustler Magazine, Inc. v. Falwell</u>, 485 U.S. 46, 50 (1988)). In concluding that Avvo's rating system was protected by the First Amendment, the <u>Avvo</u> Court noted that Avvo's website contained "reminders that the Avvo rating system is subjective." <u>Id.</u> at 1252. Further, it noted that the numerical rating system was an abstraction: "[n]o reasonable consumer would believe that Avvo is asserting that plaintiff Browne is a '5.5.' The rating is figurative: it represents in an abstracted form some panoply of attributes and the values Avvo has assigned them." <u>Id.</u> As to the question of whether any particular rating could be "proved true or false," the Court stated that "defendants' rating is not only defensible, it is virtually impossible to prove wrong." <u>Id.</u>

The ratings at issue in this action are no different, substantively, than the ratings at issue in <u>Avvo</u>. While Avvo's rating system is numerical (1-10), and Yelp's uses stars (1 star to five stars), both systems result in nothing more than a point on a graduated scale. If anything, a star-based rating system is more likely be viewed as inherently subjective or based on a variety of factors. Additionally, the Site and its terms of service include reminders that the Yelp rating system is subjective. For example, the Site states: "Yelp is an online urban city guide that helps people find cool places to eat, shop, drink, relax and play, based on the informed **opinions** of a vibrant and active community of locals in the know." MacBean Decl. ¶ 9, Ex. D; Exs. B-C. Like the numerical rating in <u>Avvo</u>, "no reasonable consumer" would believe that Yelp is asserting Kimzey's business is a "one star".

     2.   <u>Plaintiff's RICO Act claims fail to allege any "racketeering activity".</u>

Plaintiff does not allege which subsection of 18 U.S.C. § 1962 he is relying on for his RICO Act claim. Regardless, an essential element of every RICO Act claim is a "pattern of racketeering activity." *See*, *e.g.*, 18 U.S.C. § 1962(a)-(c). "Racketeering activity" is defined in 18 U.S.C § 1961. Predicate acts of racketeering underlying a RICO Act claim must be indictable. <u>Howard v. America Online, Inc.</u>, 208 F.3d 741, 748 (9th Cir. 2000). "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and that they

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 21
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1    amount to or pose a threat of continued criminal activity." <u>Turner v. Cook</u>, 362 F.3d 1219, 1229

2    (9th Cir. 2004). Nothing in the Complaint can be fairly read to contain adequate allegations to

3    support a RICO Act claim. Kimzey fails to allege any "racketeering activity," much less a

4    pattern of such activity.

5                <u>3.</u>    <u>Kimzey's claims under the Washington Consumer Protection Act are deficient</u>.

6         As with Plaintiff's RICO Act claim, Plaintiff's claim under the Washington Consumer

7    Protection Act is similarly deficient because it piggybacks on his flawed claim for defamation.

8    Kimzey's Complaint makes no effort to allege the necessary elements of a claim under the

9    Washington Consumer Protection Act. <i>See</i> <u>Hangman Ridge Training Stables, Inc. v. Safeco</u>

10   <u>Title Ins. Co.</u>, 105 Wn.2d 778, 780 (1986) (setting forth elements required to bring a claim under

11   the Washington Consumer Protection Act). Additionally, Kimzey fails to allege sufficient facts

12   that any statements made by Yelp "have the capacity to 'deceive a substantial portion of the

13   public.'" <u>Segal Co. v. Amazon</u>, 280 F. Supp. 2d 1229, 1232 (W.D. Wash. 2003) (citing <u>Sing v.</u>

14   <u>John L. Scott, Inc.</u>, 134 Wn.2d 24, 30 (1997)). The Washington Consumer Protection Act is

15   designed to vindicate wrongs where doing so is in the public interest. It is difficult to see how it

16   is in the public interest to force free, online review sites to micro-manage the reviews that are

17   posted to their sites to suit the fancies of the reviewed businesses.

18                                    **IV.   CONCLUSION**

19        Kimzey's claims are based on an "action involving public participation and petition" by

20   Yelp and therefore Kimzey must demonstrate that he can make out a prima facie case. His

21   claims must fail for two reasons. First, they are barred by CDA 230, which offers broad

22   immunity to intermediaries such as Yelp. Kimzey's creative and fanciful attempts to work

23   around CDA 230 have no legal or factual basis. Second, his claims are simply deficient on their

24   own. His core is allegation that Yelp created defamatory content through its star ratings system,

25   but the rating system is protected by the First Amendment as an indicator of opinion, not of fact.

26   His remaining claims are derivative of his defamation claim but also lack key elements.

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 22
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1     The Court should dismiss the Complaint with prejudice. A denial of leave to amend is

2   reviewed for abuse of discretion, but where a proposed amendment "would be futile, there is no

3   need to prolong the litigation by permitting further amendment." Chaset v. Fleer/Skybox Int'l,

4   LP, 300 F.3d 1083, 1088 (9th Cir. 2002).  Such is the case here.  Because Plaintiff's claims are

5   ultimately premised on Yelp's role as a publisher of third party content, Plaintiff will be unable

6   to overcome the bar posed by CDA 230. Plaintiff's claims should therefore be dismissed with

7   prejudice. See, e.g., Gavra v. Google Inc., Case No.: 5:12-CV-06547-PSG, 2013 U.S. Dist.

8   LEXIS 100127, at *9 (N.D. Cal. July 17, 2013) (rejecting possible amendment as futile); Dimeo,

9   433 F. Supp. 2d at 532 (rejecting request to amend complaint and noting that proposed claim

10   "would fall to 47 U.S.C. § 230(c)(1)").

11     Dated and respectfully submitted, this 13th day of December, 2013.

12                                             *Counsel for Defendant Yelp Inc.*

13

14                                             **FOCAL PLLC**

15                                             *s/ Venkat Balasubramani*
                                              Venkat Balasubramani, WSBA # 28269
16                                             800 Fifth Avenue, Suite 4100
                                              Seattle, WA 98104
17                                             **Phone**: 206.617.3040
                                              **Fax**:    206.260.3966
18                                             **Email**:  venkat@focallaw.com

19                                             **Yelp Inc.**

20
                                              *s/ Aaron Schur*
21                                             Aaron Schur, (Cal. SBN 229566)
                                              (admitted *pro hac vice*)
22                                             140 New Montgomery Street
                                              San Francisco, CA 94105
23                                             **Phone**: 415.908.3801
                                              **Fax**:    415.908.3833
24                                             **Email**:  aschur@yelp.com

25

26

DEFENDANT YELP INC.'S MOTION
TO STRIKE AND TO DISMISS - 23
Case No.: 2:13-CV-01734-RAJ

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I certify that on December 13, 2013, I filed the foregoing Motion to Strike and to Dismiss

3

using the Court's CM/ECF system which will send notification of such filing to Plaintiff (who is

4

registered with the Court's CM/ECF system).  I also caused a copy of the document to be sent

5

via U.S. Mail to Plaintiff's address listed on the Complaint.

6

DATED: December 13, 2013.

7

*s/ Venkat Balasubramani*
Venkat Balasubramani, WSBA # 28269

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966